IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

GEORGIA VOCATIONAL REHABILITATION
AGENCY BUSINESS ENTERPRISE PROGRAM et al,

Plaintiffs,

v.  Civil Action No. 4:18cv148

UNITED STATES OF AMERICA,

Defendant.

## OPINION & ORDER

This matter comes before the Court on Georgia Vocational Rehabilitation Agency Business Enterprise Program ("GA-SLA") and Michael C. Lee's ("Mr. Lee") (collectively "Plaintiffs'") Motion for Temporary Restraining Order (the "Motion"). Doc. 2. A hearing in this matter was held on Tuesday, December 4, 2018 at 11:00 a.m. For the reasons stated below, the Court **GRANTED** Plaintiffs' Motion.

### I.  BACKGROUND

#### A. Factual Allegations

Plaintiffs[1] bring this action pursuant to the Randolph-Sheppard Act ("RSA") and Army Regulation ("AR") 210-25 against the United States of America, by and through the Honorable James N. Mattis, Secretary of Defense, The Honorable Mark Thomas Esper, Secretary of the Army, and Contracting Officer Rhoda C. Harrison-Spence, (collectively "the Government"). See Compl. Both the RSA and AR 210-25 provide priority for blind persons in the operation of vending facilities on Federal property. Compl. ¶ 1. Plaintiffs are currently performing the food

---

[1] At the hearing, the Government raised an issue regarding Plaintiff Lee's standing, however this is a moot point. The Government concedes that the GA-SLA has standing, and any damage to Mr. Lee would inevitably damage the GA-SLA.

1

services contract at Fort Benning and have been doing so "for over fifteen (15) consecutive years." Id. ¶31. Plaintiffs entered into its most recent food services contract with the Government in July of 2016. The contract was awarded based on Plaintiffs' competitive bid and provided for a one-year contract with two optional renewal periods. The Government exercised the first option to renew and renewed the contract for an eleven-month period. However, the Government decided not to exercise the second option to renew and instead solicited new bids for a multi-year food services contract (the "Solicitation").

The contract was to be awarded by contracting officer, Rhoda C. Harrison-Spence (the "Contracting Officer"), who is Mission and Installation Contract Command at Fort Eustis, VA. Id. GA-LSA submitted a proposal on behalf of Mr. Lee in response to the Solicitation. Compl. ¶¶ 24. On August 17, 2018, the Contracting Officer rejected the GA-LSA's proposal because their "price was determined to be unreasonably high." Compl. ¶ 25[2].

On November 26, 2018, Plaintiffs filed a complaint for arbitration with the Secretary of Education. Doc. 1-3 ("Compl. Ex. C."). Plaintiffs claim that the Contracting Officer violated the RSA by failing to consult with the Secretary of Education before denying Plaintiffs' proposal, Compl. ¶28, which failure is governed in the improper computation of the competitive range of bids.

### B. Procedural History

On August 17, 2018, the Government rejected Plaintiffs' proposal. On August 22, 2018, Plaintiffs filed a protest with the Government Accountability Office ("GAO") challenging their exclusion, which triggered a stay preventing the Government from awarding the contract to

---

[2] The Army's determination that GA-SLA's bid was too high was based on a competitive range allegedly established under the Federal Acquisition Regulation ("FAR"). The competitive range is discussed in greater detail below.

2

someone else. Doc. 12-1 ("Spence Decl.") ¶ 9. On November 23, 2018, the GAO dismissed Plaintiffs' protest. Id. On November 26, 2018, Plaintiffs filed a complaint for arbitration with the Secretary of Education and filed a complaint for Temporary Restraining Order and Preliminary Injunction with this Court. Compl.

On November 27, 2018, Plaintiffs filed their Motion for Temporary Restraining Order. Doc. 2. The Government appeared in the matter and filed a Notice on November 29, 2018. Docs. 6, 7. On November 30, 2018, this Court entered an Order requiring the Government to file its response on or before 12:00 p.m. on December 3, 2018, and on December 3, 2018 the Government promptly filed its response. This matter was heard on December 4, 2018 at 11:00 a.m.

## II. LEGAL STANDARD

Under Rule 65 of the Federal Rules of Civil Procedure, the court may issue a preliminary injunction after notice has been provided to an adverse party. Fed. R. Civ. P. 65. "The standard for granting either a TRO or a preliminary injunction is the same." Sarsour v. Trump, 245 F. Supp. 3d 719, 728 (E.D. Va. 2017). Like a preliminary injunction, a temporary restraining order is an 'extraordinary remed[y] involving the exercise of a very far-reaching power to be granted only sparingly and in limited circumstances." Id.

Accordingly, for the Court to grant a motion for a temporary restraining order the moving party must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Id (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24 (2008)) (internal quotations omitted); see also Pashby v. Delia, 709 F.3d 307, 320-21 (4th Cir. 2013) (each element of the test must be satisfied). "A party seeking preliminary injunction . . . must clearly show that it is likely to succeed on the merits." Sarsour, 245 F. Supp.

3d at 729 (alterations and quotation marks omitted). Irreparable harm means harm that is "neither remote nor speculative, but actual and imminent." Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 812 (4th Cir. 1991). When evaluating whether to issue an injunction, a court "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Winter, 555 U.S. at 24.

### III. ANALYSIS

#### A. Summary of Argument

Plaintiffs move this Court to enter an Order temporarily restraining the Government from:

(a) moving forward with the procurement process with respect to the subject Solicitation, including but not limited to making award of a contract to an offeror other than the GA-SLA, entering into such a contract, or initiating performance under such contract until

(i) a hearing has been held on a preliminary injunction and the Court's orders with respect thereto have been issued,

(ii) an arbitration pursuant to the Randolph-Sheppard Act ("R-S Act") has been conducted and the R-S Act arbitration panel has issued a decision with respect to the GA-SLA's Complaint for Arbitration alleging the Army's violation of the R-S Act arbitration decision, and

(iii) the Court has had the opportunity to review said decision as a final agency action in accordance with the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq. and issued orders with respect thereto; and

(b) awarding a contract to an offeror other than GA-SLA until (i) a hearing on preliminary injunction and the Court's orders with respect thereto as to whether the Army has fully complied with Army Regulation 210-25, subparagraph 6.b.(1)(c), particularly as regards the requirement for the Army's requesting, receiving, and complying with the approval or agreement of the Secretary of Education pursuant to AR 210-25 pertaining to the subject Solicitation.

Doc. 3 at 1-2. This matter arises under the RSA, which provides, in relevant part:

In authorizing the operation of vending facilities on Federal property, priority shall be given to blind persons licensed by a State agency . . . [and] [A]ny limitation on the placement or operation of a vending facility based on a finding that such placement or operation would adversely affect the interests of the United States shall be fully justified in writing to the Secretary, who shall determine whether such limitation is justified. A determination made by

4

the Secretary pursuant to this provision shall be binding on any department, agency, or instrumentality of the United States affected by such determination. The Secretary shall publish such determination, along with supporting documentation, in the Federal Register.

20 U.S.C. § 107; 34 C.F.R. § 395.33(a). GA-SLA is the authorized State Licensing agency for the state of Georgia, and Mr. Lee is a "blind person" under the RSA.

Plaintiffs argue that when the Contracting Officer denied their proposal "without seeking and obtaining a determination by the Secretary as to reasonableness of cost" the Government "usurped the Secretary's sole authority to determine price reasonableness." Doc. 3 at 5. Plaintiffs also argue that the Government applied the wrong standard in assessing the reasonableness of cost by not consulting the Secretary of Education. Id. Plaintiffs have filed a complaint for arbitration with the Secretary of Education, pursuant to the RSA, which provides that:

> Whenever any State licensing agency determines that any department, agency, or instrumentality of the United States that has control of the maintenance, operation, and protection of Federal property is failing to comply with the provisions of this chapter or any regulations issued thereunder (including a limitation on the placement or operation of a vending facility as described in section 107(b) of this title and the Secretary's determination thereon) such licensing agency may file a complaint with the Secretary who shall convene a panel to arbitrate the dispute pursuant to section 107d-2 of this title, and the decision of such panel shall be final and binding on the parties except as otherwise provided in this chapter.

20 U.S.C. §107d-1. Once the Secretary receives any such complaint, the Secretary "shall convene an ad hoc arbitration panel . . . give notice, conduct a hearing, and render its decision which shall be subject to appeal and review as a final agency action for purposes of [the APA]" 20 U.S.C. § 107d-2. If the panel finds that an act or practice of an agency or department violates the RSA, then the head of that department is instructed to terminate the act or practice and take "such other action as may be necessary to carry out the decision of the panel." Id. Plaintiff acknowledges that the RSA makes arbitration with the Secretary of Education mandatory. Doc. 3 at 8.

5

### B. The Court's Jurisdiction and Authority to Grant Relief Under Rule 65 of Federal Rules of Civil Procedure

Before reaching the merits of Plaintiff's argument, Defendant alleges: 1) that the Court lacks jurisdiction to act in the dispute; and 2) that relief under Rule 65 of the Federal Rules of Civil Procedure is improper.

Defendant questions whether Plaintiffs' allegations are sufficient to establish this Court's jurisdiction to issue a TRO. Doc. 12 at 9, n.7 (citing DiBiase v. SPX Corp., 872 F.3d 224, 232-34 (4th Cir. 2017) (analyzing whether district court had subject matter jurisdiction before addressing the merits of the district court's denial of a preliminary injunction motion). Defendants contend that Plaintiffs have not exhausted their administrative remedies and therefore "do not have a final agency decision such that sovereign immunity is waived for an action under the APA." (citing Morris v. Maryland, 908 F.2d 967, 1990 WL 101396 (4th Cir. July 11, 1990) (unpublished) ("The determination that the vendors are required to exhaust their remedies under the RSA results from a reading of that Act and an interpretation of congressional intent. Because Congress prescribed an elaborate remedial mechanism for the resolution of disputes arising under the Act, it is entirely appropriate to conclude that Congress must have intended that such a remedy be exhausted.")(non-injunction case); Circuit City v. EEOC, 75 F.Supp.2d (E.D. Va. 1999) (A party "may rely on the waiver of sovereign immunity afforded by Section 702 of the APA only if the APA is implicated in the first instance: that is, only if there has been an agency action which is subject to review.")

Neither party cites binding case law from the Fourth Circuit addressing whether the Court has jurisdiction to enter a preliminary injunction in a matter arising under the RSA that is pending arbitration. However, Plaintiff cites case law from courts within the Fifth, Sixth, Tenth and Ninth Circuits where courts have determined that a court may exercise its jurisdiction to grant injunctive relief to a plaintiff pending review of an arbitration panel. See Doc. 3 (citing Commonwealth of

6

Kentucky, Education and Workforce Development Cabinet, Office for the Blind v. United States ex rel. Hagel, 759 F.3d 588, 599-600 (6th Cir. 2014); Kansas v. United States, 171 F. Supp. 3d 1145, 1155 (D. Kansas 2016); Hawaii, Department of Human Services, Division of Vocational Rehabilitation, Hoopono-Services for the Blind v. United States Marine Corps, 2018 WL 2187977 (D. Haw. May 11, 2018)); Johnson and State of Texas by and through Health and Human Services Commission, Department of Assistive and Rehabilitative Services v. United States ex rel. Hagel, 2014 WL 12540469 at *4 (W.D. Tex. Sept. 12, 2014).

In Kentucky, a plaintiff filed a motion and complaint for temporary restraining order and preliminary injunction to prohibit the government from awarding a contract while the parties completed arbitration under 20 U.S.C. 1073-1 of the RSA. Kentucky, 759 F.3d at 593. The district court found that it lacked jurisdiction to consider relief because Plaintiff had not yet exhausted its administrative remedies. Id. at 594. However, on appeal the Sixth Circuit reversed the district court's ruling and determined that "the Act's exhaustion requirement is not jurisdictional." Id. at 598. The court reasoned that the language in the RSA requiring that a state licensing agency file a complaint with the secretary "does not rise to the level of a clear jurisdictional statement." Id. (citing Arbaugh v. Y & H Corp., 546 U.S. 500, 515 (2006) (alleging that Arbaugh requires Congress to "state[] [clearly] that a threshold limitation on a statue's scope shall count as jurisdictional . . ."). Further, the Sixth Circuit reasoned that federal courts "can craft prudential exceptions to non-jurisdictional exhaustion requirements and grant relief in extraordinary cases." Id. Next, the Sixth Circuit reasoned that, while exhaustion is not clearly jurisdictional, "exhaustion is an area of law in which 'sound judicial discretion governs'" and the court may decline to exercise jurisdiction. Id. at 599. In determining whether exhaustion should be "excused" the Sixth Circuit set forth three considerations for determining whether the Court

should exercise its discretionary jurisdiction: 1) whether the litigant can show that requiring exhaustion will result in irreparable harm; 2) whether the administrative remedy is wholly inadequate; or 3) whether the administrative body is biased, making recourse to the agency futile. Id. (citing McCarthy v. Madigan, 503 U.S. 140, 146-148 (1992); Randolph-Sheppard Vendors of Am. v. Weinberger, 795 F.2d 90, 104 (D.C. Cir. 1986).

Plaintiffs contend that "[i]f the Army wrongfully deprives [Plaintiffs] of its rights [to] a meaningful arbitration with the Army concerning alleged violation of the R-S Act by awarding a contract to another offeror before an arbitration decision, [Plaintiffs] will have no adequate remedy at law even if [Plaintiffs] prevail[] in the arbitration." Doc. 3 at 10 (citing United International Investigative Services, Inc. v. United States, 41 Fed. Ct. 312, 323 (1998) (Non RSA Case) ("the [lost] opportunity to compete for a [Government] contract and secure any resulting profit has been recognized to constitute significant harm."); Hospital Klean of Texas, Inc. v. United States, 65 Fed. Ct. 618, 624 (2005) (Non RSA case) (loss of profit stepping from a lost opportunity to compete for a contract in accordance with solicitation provisions has been recognized as sufficient to constitute irreparable harm); Caddell Construction Co., Inc. v. United States, 111 Fed. Ct. 49, 115 (2013) ("In an action at law, the disappointed bidder can only recover protests costs, not lost profits, and that would not fully compensate the protester.").

Defendant also argues that Plaintiffs cannot request relief under Rule 65 of the Federal Rules of Civil Procedure because "their Complaint contains no independent claim for relief." Doc. 12 at 10. Defendant contends that Plaintiff cannot plead a claim for relief under the Administrative Procedure Act ("APA") because they lack standing to bring a claim under the APA as the panel has not yet provided an arbitration decision for them to review. Doc. 12 at 10 (citing Compl. ¶ 79d (Plaintiffs "pray for . . . relief" including "[t]hat this Court maintain jurisdiction over the

injunction pending a decision in the R-S Act arbitration in order to review such decision as a 'final agency action' pursuant to the [APA] and to consider applications by the parties based upon such arbitration decision.").

The Court finds that the case law cited by Plaintiffs is persuasive, and that it may exercise its jurisdiction to issue a temporary restraining order or preliminary injunction in this matter. The Government's arguments that the Court has no jurisdiction are unavailing as postponing the Court's decision for one year or more[3] would leave Plaintiff with no remedy and effectively deny Plaintiffs' statutory rights under 107d-1.

### C. Merits of Injunctive Relief

#### i. Likelihood of Success on the Merits

To show that their substantive claim—that the Government violated the R-S Act by not referring the issue of price reasonableness of [their] proposal to the Secretary of Education for her binding determination—is likely to succeed on the merits, Plaintiffs point to the merits of two decisions of R-S Act arbitration panels. Doc. 3 at 12 (citing Kansas v. United States, 171 F. Supp. 3d at 1159) ("while the Court is not bound by these panel decisions, they are entitled to respectful consideration, particularly because a similar arbitration panel will decide this similar dispute."). The two cases are Colorado Department of Human Services, Division of Vocational Rehabilitation, Business Enterprise Program, Case No. R-S/10-06 (May 20, 2012) (the "Colorado Arbitration"), and Opportunities for Ohioans with Disabilities v. United States Department of the Air Force, No. R-S/16-08 (Feb. 22, 2018) (the "Ohio Arbitration").

In the Colorado Arbitration, the State Licensing Agency was eliminated from the competitive range because of price, and the Air Force did not consult with the Secretary of

---

[3] The Government candidly admitted that it would probably take at least one year to complete arbitration.

Education at any time about the issue of price reasonableness. The arbitration panel found that "the Air Force Violated 34 C. F. R. § 395.33(a) when it failed to consult with the Secretary of Education." Doc. 3-1 at 11-15. The panel further reasoned that "even if the state licensing agency's bid is not within the competitive range set by the contracting agency, the matter still must be returned to the Secretary to decide, after consulting with the contracting agency, if the blind vendor can provide an operation at a reasonable cost, with food of a high quality." Id. at 14. Similarly, in the Ohio Arbitration, the Ohio Arbitration panel majority ruled that "[t]he statutory and regulatory scheme make it clear that an SLA's bid cannot be rejected without consulting with the Secretary of Education who makes the final decision. 34 C.F.R. § 395.33(a)." Id.

Defendant urges the Court not to follow the guidance provided by Plaintiff in the two RSA arbitration panel rulings as these rulings are "not binding precedent on other arbitration panels, let alone federal courts." Doc. 12 at 20. Defendant argues that Plaintiff would also fail on the merits of its claim because Plaintiff has not shown a clear likelihood of success as the statute relied on by Plaintiffs does not require the relief they are requesting in arbitration. Doc. 12 at 15. Defendant also attacks Plaintiff's argument that Defendant was required to "refer the issue of whether Plaintiff's bid was reasonable to the Secretary of Education rather than excluding Plaintiffs' bid after the Army determined the bid was not competitive." Doc. 12 at 16. Defendant cites sections (a) and (b) of 34 C.F.R. 395.33, which state:

(a) Priority in the operation of cafeterias by blind vendors on Federal property shall be afforded when the Secretary determines, on an individual basis, and after consultation with the appropriate property managing department, agency, or instrumentality, that such operation can be provided at a reasonable cost, with food of a high quality comparable to that currently provided employees, whether by contract or otherwise. Such operation shall be expected to provide maximum employment opportunities to blind vendors to the greatest extent possible.

(b) In order to establish the ability of blind vendors to operate a cafeteria in such a manner as to provide food service at comparable cost and of comparable high quality as that available

10

from other providers of cafeteria services, the appropriate State licensing agency shall be invited to respond to solicitations for offers when a cafeteria contract is contemplated by the appropriate property managing department, agency, or instrumentality. Such solicitations for offers shall establish criteria under which all responses will be judged. Such criteria may include sanitation practices, personnel, staffing, menu pricing and portion sizes, menu variety, budget and accounting practices. <u>If the proposal received from the State licensing agency is judged to be within a competitive range and has been ranked among those proposals which have a reasonable chance of being selected for final award, the property managing department, agency, or instrumentality shall consult with the Secretary as required under paragraph (a)</u> of this section. If the State licensing agency is dissatisfied with an action taken relative to its proposal, it may file a complaint with the Secretary under the provisions of § 395.37.

34 C.F.R. § 395.33 (emphasis added).

As noted in the CFR, the Government was only required to consult the Secretary after a determination that the bid was "judged to be within a competitive range." Id (citing N. Carolina Div. of Servs. For Blind v. United States, 53 Fed. Cl. 147, 164 (2002), aff'd sub nom N. Carolina Div. of Servs. For the Blind v. United States, 60 F. App'x 826 (Fed. Cir. 2003) ("[T]he DOE regulations require an SLA's proposal to be within the competitive range or have a reasonable chance of being selected for final award before applying the priority set forth under section 395.33(a)"); Kentucky v. United States, 759 F.3d 588, 592 (6th Cir. 2014) ("If the state licensing agency's proposal, according to the neutral, pre-published criteria, is within a 'competitive range' and the Department of Education ("DOE") agrees with the state licensing agency's assessment of the vendors qualifications, the blind vendor will be awarded the contract."); NISH v. Cohen, 247 F.3d 197, 203 (4th Cir. 2001) ("If the agency determines that the SLA proposal is competitive . . . the agency is to consult with DOE. See id. § 395.33(b), (d). If, however, the SLA proposal is determined not to be within the competitive range, the agency may award the contract to the most highly evaluated offeror.")

AR 210-25 contains similar language. Doc. 12 at 18 (citing AR 210-25 6b(1)(a) ("If the [SLA] submits a proposal and it is not within the competing range established by the contracting officer, award may be made to another offeror following normal procurement procedures . . .").

At the hearing, the Government argued that its determination of the competitive range was consistent with the Federal Acquisition Regulation ("FAR") which describes the process by which the Government is to determine the competitive range. See 48 C.F.R. §§ 15.300-15.307. The FAR sets forth a requirement that the source selection authority shall "[e]stablish an evaluation team, tailored for the particular acquisition, that includes appropriate contracting, legal, logistics, technical, and other expertise to ensure a comprehensive evaluation of offers." 48 C.F.R. § 15.303

The FAR also provides instructions for how the Government is required to determine cost or price evaluation, see 48 C.F.R. §15.305, and the discussions that the Government is supposed to have with offerors regarding the competitive range, 48 C.F.R. § 15.306.

In section 15.306(c), the FAR provides: "[i]f the contracting officer, after complying with paragraph (d)(3) of this section, decides that an offeror's proposal should no longer be included in the competitive range, the proposal shall be eliminated from consideration for award." Id (emphasis added). Section (d)(3) provides:

> At a minimum, the contracting officer must, subject to paragraphs (d)(5) and (e) of this section and 15.307(a), indicate to, or discuss with, each offeror still being considered for award, deficiencies, significant weaknesses, and adverse past performance information to which the offeror has not yet had an opportunity to respond. The contracting officer also is encouraged to discuss other aspects of the offeror's proposal that could, in the opinion of the contracting officer, be altered or explained to enhance materially the proposal's potential for award. However, the contracting officer is not required to discuss every area where the proposal could be improved. The scope and extent of discussions are a matter of contracting officer judgment.

48 C.F.R. § 15.306.

Based on the evidence currently before the Court it appears that the Government did not appropriately compute the competitive range in at least two respects: 1) it does not appear that the Government selected "an evaluation team" as required, and 2) it does not appear that the Government conferred with the bidder before determining that its bids were not competitive. It also appears that the total bid is potentially meaningless. Under the Government's indefinite delivery-indefinite quality ("IDIQ") contract, Plaintiffs are paid monthly based on the number of meals served. The contract price is not paid based on the bid itself and by necessity varies with the number of meals served and the locations at which they are served. The Government gives as its reasoning for not exercising the third-year option on Plaintiffs' contract on the fact that the projected monthly cost would exceed the total bid over the full thirty-five-month period. Again, based on the evidence obtained by the Court, this situation appears to arise from the Government's failure to project accurately the number of meals served and the number of locations. At this point it further appears from the evidence, at least as to the number of meals to be served, that it is again underestimated.

Accordingly, it does not appear to the Court that the competitive range as to the overall price has been accurately projected, thus making the Government's determination procedurally deficient as well as substantively questionable. The importance of the requirement that the Contracting Officer meet with the Plaintiffs is made clear by Mr. Lee's testimony that based upon current information, the number of meals, and potentially the number of locations, may have been substantially understated in the Government's projections. The Government argues that it will potentially cost the Government a significantly extra monthly cost based upon Plaintiff's existing contract as opposed to the lower bid of the proposed new contract. In weighing the evidence on this issue, the Court should consider the prospective meal costs under the existing contract, the

proposal Plaintiff's proposal for a new contract, as well as under the bid which the Government proposes to accept effective January 1, 2019. Accordingly, the Court **DIRECTS** Plaintiffs and Defendant to furnish that information as to Plaintiffs' current contract as well as its bid for the new contract by Tuesday, December 11, 2018. The Government is expected to furnish the contract for the bid which it proposes to accept. Due to the confidentiality of this information, the Court **ORDERS** that it be furnished under seal, or if for any reason it is not furnished under seal, it will not be treated as a public document, but will be returned to the Government.

*ii. Irreparable Harm*

Plaintiffs contend that they will suffer irreparable harm if the Court does not grant a temporary restraining order, and ultimately a preliminary injunction, as they may not recover damages for loss of profits even if they prevail in arbitration, and that such loss of profit is sufficient to establish irreparable harm. Doc. 3 at 15 (citing Hospital Klean of Texas, Inc. v. United States, 65 Fed. Ct. 618, 624); Update, Inc. v. Samilow, 311 F. Supp. 3d 784, 795 (E.D. Va. 2018 ("[g]enerally, irreparable harm 'is suffered when monetary damages are difficult to ascertain or are inadequate") Plaintiffs also point to the harm to Mr. Lee who has performed the contract for over fifteen (15) consecutive years and is Mr. Lee's sole source of business income, and sole means for paying his "managers, administrators, supervisors, and workforce." Id. Plaintiffs contend that there are "no other contracting opportunities available to Mr. Lee under the R-S Act program" and that there is a "great likelihood that Mr. Lee would have to shut down his business if he is not awarded the contract. Id. GA-SLA also receives a "set aside fee" from Mr. Lee based on his net proceeds, and GA-SLA contends that these revenues cannot be replaced because "there is no other contract opportunity available in the state of Georgia which is anywhere closed to the monetary value" of the Ft. Benning contract. Doc. 3 at 16 (citing Kansas v. United States, 171 F. Supp. 3d

14

at 1155, 1157) ("a considerable set aside fee it collects from managers of facilities" constituted irreparable harm where "adequate compensatory or other relief" was not otherwise available).

Defendant contends that Plaintiffs' "dissatisfaction with the remedies Congress chose to provide . . . does not make those remedies inadequate or amount to irreparable harm." Doc. 12 at 22 (citing Randolph-Sheppard Vendors of Am. v. Weinberger, 795 F.2d 90, 109 (D.C. Cir. 1986) ("[T]he irreparable injury inquiry merges into the question of whether there exists an adequate administrative remedy, because appellants' threatened injury will not be irreparable if there exists [a remedy] to repair it."); Di Biase, 872 F.3d at 230 ("Mere injuries, however substantial in terms of money, time and energy necessarily expanded in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm.") Defendant points to a case from the District of Colorado that rejected an "irreparable harm" argument that is similar to Plaintiffs' argument. Doc. 12 at 24 (citing Colorado v. United States, 813 F. Supp. 2d 1230, 1236-37 (D. Colo. 2011) (rejecting a plaintiff's argument that he would have no further business upon expiration of the contract and would have to close his company). Defendant also notes that any harm alleged to Plaintiffs' employees is mitigated by way of a provision that requires that the new contractor offer a right of first refusal for qualified employees who were employed under Plaintiffs' "soon-to-be-expired contract." Doc. 12 at 24, n. 14.

Defendants candidly admitted at the hearing that, while the right of first refusal applies for qualified employees, it does not apply to the forty-five managers that Mr. Lee currently employs or to Mr. Lee himself. Further, if the new vendor decides to reduce the work force, the right of first refusal may not be extended to all qualified employees.

Based on the evidence presented before the Court, it appears that Plaintiff will likely suffer irreparable harm.

### iii. Balance of Equities and Public Interest

Plaintiffs argue that the balance of equities tips in their favor. In support of their argument, they proffer that they are "prepared to continue performing the existing food service contract at Ft. Benning" and that "granting injunctive relief will not cause any interruption in food services being provided to the Army." Doc. 3 at 17 (citing Hawaii at *8-9; Kansas, 171 F. Supp. 3d at 1157 ("an injunction is appropriate relief to maintain the status quo and allows the Government to obtain the [food] services it seeks under the procedures contemplated by the RSA pending the outcome of arbitration" such that the balance of harms factor favors the SLA). Regarding public interest, Plaintiff argues that an injunction serves the public interest that the Government "adhere to the applicable regulations in evaluating the SLA's proposal" and "maintain the integrity of the federal procurement process whereby agencies are required to fulfill the promises they make in the solicitations they issue." Doc. 3 at 18. Plaintiff argues that "a contract award before an arbitration decision as to whether such award was lawful" would undermine the public interest. Id. Additionally, GA-SLA testified that losing the Fort Benning contract would significantly reduce its funding and its ability to train other blind vendors.

Defendant contends that the balance of equities requires a heightened review that is "even more searching" than the usual determination of whether an injunction will "preserve the status quo" because Plaintiffs' relief is "mandatory in nature" in that it would require the Government to remain bound to a contract beyond its expiration date. Doc. 12 at 26-27; see also Doc. 12 at 28 (citing Omega World Travel, Inc. v. Trans World Airlines, 111 F.3d 14 (4th Cir.1997) (finding that an injunction was "best characterized as mandatory [where] it ordere[d] the parties to continue

in a relationship that would otherwise, under the contract, be terminable at will.). Particularly, Defendant notes that Plaintiffs' contract requires them to pay $1 million more per month than if Defendant was able to end its contract with Plaintiffs as scheduled. Doc. 12 at 27. Defendant contends that a mandatory injunction is not favorable for a TRO as the purpose of a preliminary injunction is "merely to preserve the relative positions of the parties until a trial on the merits can be held." Doc. 12 at 28 (citing Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981).

The Government also argues that the interests of prospective new vendor, service-disabled veteran owned business, should be considered as they won the competitive solicitation and any delay harms them. Id.

While the Government points to its financial interests, the balance of equities and public interest in granting a temporary restraining order weigh in favor of Plaintiffs as Plaintiffs will suffer the loss of major funds for programs that train blind vendors and will potentially cause the termination of employees, including those at the management level.

## IV. CONCLUSION

The Court **FINDS** that the evidence presently before the Court supports a likelihood that Plaintiffs will succeed on the merits, that Plaintiffs will suffer irreparable harm, and that the balance of equities and public interests weigh in favor of granting Plaintiffs' Temporary Restraining Order. Accordingly, the Court **GRANTS** Plaintiffs' Motion for Temporary Restraining Order, Doc. 2, and **ENJOINS** Defendant from awarding a new contract to replace Plaintiffs' existing contract until after December 14, 2018, at which time the Court will conduct a full hearing on Plaintiffs' Complaint for Preliminary Injunction.

The Court **ORDERS** Plaintiffs to post a nominal $1,000 cash bond pending the Court's hearing on Plaintiffs' Complaint for Preliminary Injunction.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
December __, 2018