IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division



FILED

JAN 30 2023

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

GEORGIA VOCATIONAL
REHABILITATION AGENCY
BUSINESS ENTERPRISE PROGRAM,
*et al.*,

                Plaintiffs,

v.                                            CIVIL ACTION NO. 4:18-cv-148

UNITED STATES OF AMERICA,

                Defendant.

*MEMORANDUM OPINION AND ORDER*

Before the Court is the United States of America's ("Defendant" or "Government") Motion to Modify Preliminary Injunction, filed on April 26, 2022. Def.'s Mot. Modify Prelim. Injunction, ECF No. 85 ("Def.'s Mot."); Def.'s Memo. Modify Prelim. Injunction, ECF No. 86 ("Def.'s Memo. in Support"). On May 10, 2022, Georgia Vocational Rehabilitation Agency and Michael Lee ("Plaintiffs") responded in opposition and filed a supplemental brief on October 18, 2022. Pl.s' Resp. Opp. To Def.'s Mot., ECF No. 95 ("Pl.s' Resp. Opp."); Supp. Memo. In Support of Pl.s' Resp. Opp., ECF No. 114 ("Pl.s' Supp. Memo."). On May 16, 2022, the Government replied and filed a supplemental brief on October 25, 2022. Def.'s Reply to Pl.s' Resp. Opp. To Def.'s Mot., ECF No. 97 ("Def.'s Reply"); Def.'s Resp. Supp. Memo., ECF No. 117 ("Def.'s Supp. Memo."). A hearing was held before this Court on December 8, 2022. Having heard from both parties and reviewed the parties' filings, this matter is ripe for judicial determination. For the reasons below, Defendant's motion is **GRANTED**.

## I. FACTUAL AND PROCEDURAL HISTORY

The Randolph-Sheppard Act ("RSA"), 20 U.S.C. § 107 et seq., provides blind individuals licensed by state agencies with increased employment opportunities and self-support through the operation of vending facilities on federal property. On November 26, 2018, Plaintiffs alleged in their complaint that in 2018 the Government violated the RSA during the procurement process when soliciting proposals for a Food Service Contract at Fort Benning, Georgia by excluding Plaintiffs from the contractual competitive range. *See* Compl., ECF No. 1. Excluding Plaintiffs from the competitive range eliminated their bid from consideration for the 2018 Solicitation contract award. *Id.* On November 27, 2018, Plaintiffs filed a Motion for Temporary Retraining Order. Mot. for TRO, ECF No. 2. On December 11, 2018, the Court entered an order granting the motion. TRO Op. & Order, ECF No. 21. After further briefing and a hearing, the Court granted the Plaintiffs' Motion for a Preliminary Injunction on January 22, 2019. Prelim. Injunction Op. & Order, ECF No. 58.

On November 26, 2018, Plaintiffs filed a complaint seeking to enjoin the Government from awarding a contract through the 2018 Solicitation until the completion of arbitration. Compl. On January 22, 2019, the Court issued a preliminary injunction that enjoined the Government "from proceeding with the procurement of and specifically from making any award of the subject Fort Benning Food Service Contract until a decision in arbitration under the Randolph-Sheppard Act has been rendered or upon further order of this Court." Prelim. Injunction Op. & Order, at 1. As of 2020, the Department of Education ("DoE") had not scheduled an arbitration or convened an arbitration panel. Hearing Transcript ("Tr.") at 11-13. The pandemic delayed further developments. *Id.* In June 2021, the parties agreed to stay the arbitration pending the outcome of settlement negotiations. *Id.* at 12. Then, settlement negotiations broke down. To date, an arbitration

panel has not been convened by the DoE and a hearing has not been scheduled before an arbitration panel.

The Government did not award a contract in the 2018 Solicitation on account of the current litigation and pending arbitration. Since the issuance of the Preliminary Injunction, Plaintiffs have continued to service Fort Benning through six-month bridge contracts tied to the initial contract awarded to Plaintiffs in 2016. *Id.* at 6, 22-23; Prelim. Injunction Op. & Order. If the Government had awarded a contract in 2018, the contract would expire in the Summer or Fall of 2023, with a possibility of a six-month extension. Tr. at 5. The Government argues that since the issuance of the preliminary injunction, there have been "significant, unforeseen" circumstances that justify modifying the preliminary injunction, namely, changing food service needs at Fort Benning, the increased federal contractor minimum wage, and the need for contract re-categorization. Def.'s Memo. in Support, at 11-12; Def.'s Supp. Memo., at 6-7. Further, the Government argues that cancelling the 2018 Solicitation now would serve the public interest because the Government anticipates issuing a new solicitation regardless of the outcome of the arbitration. *Id.* at 12-13. The Government argues that Plaintiffs could freely compete for a future solicitation. *Id.* at 8-9.

Plaintiffs argue that if allowed to issue a new solicitation before the conclusion of arbitration, the Government could improperly exclude Plaintiffs from the competitive range once again. Pl.s' Resp. Opp., at 13, 15, 19. Further, Plaintiffs argue that the Government has not demonstrated a significant change in the food service needs at Fort Benning that would justify the modification of the preliminary injunction, as similar changes at other Army bases have not resulted in any food service contracts being terminated or re-solicited before to the expiration of the contract term. *Id.* at 17-18. Finally, in their supplemental brief, Plaintiffs argue that the alleged

3

circumstances warranting the immediate re-soliciting of the contract could be addressed with modifications to the current contract. Pl.s' Supp. Memo., at 114.

## II. LEGAL STANDARD

The Court may modify the injunction if the moving party can demonstrate a significant change in factual circumstances that renders the continued enforcement of the original injunction inequitable. *See Horne v. Flores*, 557 U.S. 433, 447 (2009); *United States v. Snepp*, 897 F.2d 138, 141 (4th Cir. 1990); *see also,* Fed. R. Civ. P. 60(b)(5). Although *Horne* and *Snepp* set forth this standard in the context of modifying a permanent injunction, courts have utilized the same standard to decide whether to modify a preliminary injunction.[1] When considering such a request, courts "do not review any aspects of the present case other than those which developed subsequent to the granting of the preliminary injunction." *Favia v. Indiana University of Pennsylvania*, 7 F.3d 332 (3d Cir. 1993) (quoting *Fern v. Thorp Pub. Sch.*, 532 F.2d 1120, 1128 (7th Cir. 1976)).

The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has not issued a binding decision setting forth the standard for modifying a preliminary injunction. However, courts in this district have applied a non-exhaustive list of factors in considering whether to modify or dissolve a preliminary injunction. The factors include the following: "(1) the circumstances leading to entry of the injunction and the nature of the conduct sought to be prevented; (2) the

---

[1] *See e.g., Multi–Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 60 F.3d 823, 1995 WL 406612, at *2–3 (4th Cir. 1995) (unpublished opinion); *Centennial Broad., LLC v. Burns*, 433 F. Supp. 2d 730, 733 (W.D. Va. 2006) ("Although a preliminary injunction is not a 'final' order or judgment for purposes of Rule 60(b)(5), courts nonetheless apply the general equitable principles set forth in Rule 60(b)(5), which provides for relief from judgment 'if it is no longer equitable that the judgment should have prospective application.' " (footnote omitted)). Even where courts have questioned if this is the proper standard to apply, there is no dispute that "a district judge has discretion to revise a preliminary remedy if persuaded that change had benefits for the parties and the public interest." *Commodity Futures Trading Comm'n v. Battoo*, 790 F.3d 748, 751 (7th Cir. 2015); *see also Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 414 (6th Cir. 2012) ("The power to modify or dissolve injunctions springs from the court's authority to relieve inequities that arise after the original order." (internal quotation marks omitted)); *N.Y. City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 328 (S.D.N.Y. 2010) ("Additionally, this Court has plenary power over a preliminary injunction and has the equitable discretion to vacate or revise it.")

length of time since entry of the injunction; (3) whether the party subject to its terms has complied or attempted to comply in good faith with the injunction; (4) the likelihood that the conduct or conditions sought to be prevented will recur absent the injunction; (5) whether the moving party can demonstrate a significant, unforeseen change in the facts or law and whether such changed circumstances have made compliance substantially more onerous or have made the decree unworkable; and (6) whether the objective of the decree has been achieved and whether continued enforcement would be detrimental to the public interest." *Crutchfield v. U.S. Army Corps of Engineers*, 175 F. Supp. 2d 835, 844 (E.D. Va. 2001).

### III. DISCUSSION

The Court will address the relevant factors to this case in turn. For the below reasons, the Court finds that equity demands the modification of the preliminary injunction.

#### A. Length of Time Since Entry of The Injunction

The Court granted the preliminary injunction in January 2019. Prelim. Injunction Op. & Order. The Court never intended the preliminary injunction to guarantee an indefinite period of arbitration. The preliminary injunction in this matter retained the status quo to give the parties an opportunity to arbitrate. *Id*. The Court has granted that opportunity. Most importantly, four years have passed without the DoE convening an arbitration panel or scheduling a hearing before an arbitration panel. The parties had an opportunity to hold a remote arbitration hearing in June 2021 over Zoom. Tr. at 26. Plaintiffs preferred an in person hearing to better accommodate their blind witnesses and client. *Id*. at 30. However, no arbitration hearing has been held in the interim period. *Id*. Typically, after an arbitration panel is constituted, there is a 45-day period in which to schedule the arbitration. *Id*. at 3. During this process, there is generally briefing and preliminary matters to manage before the arbitration is held. *Id*. After the arbitration is held, the rules call for a decision

5

in 30 days. *Id.* at 4. Typically, arbitrations take a year or more to resolve. *Id.* at 13-14. The Court has no faith that an arbitration panel or hearing will be convened faster than the time that has already elapsed in this matter.

The 2018 Solicitation was only meant to be a five-year contract with a six-month bridge contract option, meaning if the 2018 Solicitation was awarded in the Fall of 2018, it would naturally terminate in the Fall of 2023 or Summer of 2024. *Id.* at 5, 11. Since no contract was awarded for the 2018 Solicitation, Plaintiffs have continued to provide services to the Government through six-month bridge contracts derived from their 2016 contract. Pl.s' Resp. Opp., at 4-5. Essentially, the potential arbitration delayed these proceedings through the term of the contract. Accordingly, it would be inefficient and antithetical to the purpose of a preliminary injunction to allow the injunction to live past the term of the 2018 Solicitation in the hopes of an arbitration hearing in the indefinite future. The sheer length of time that has passed without an arbitration panel or hearing weighs in favor of a modification of the preliminary injunction.

### B. Nature of the Conduct Sought to be Prevented and Compliance with the Injunction

As stated above, the preliminary injunction in this matter retained the status quo to give the parties an opportunity to arbitrate. Prelim. Injunction Op. & Order. The Court enjoined the Government from awarding a contract through the 2018 Solicitation because of the alleged violation of Plaintiffs' rights under the RSA. *Id.* During the interim period, the Government has complied with the injunction as Plaintiffs have continued to service Fort Benning. Tr. at 6. Four years have passed since the issuance of the preliminary injunction, no arbitration hearing or panel has been convened, and a contract awarded in the 2018 Solicitation was only meant to last five years with a six-month option. *Id.* at 5, 11-13. In continuing to provide services to Fort Benning, Plaintiffs have completed four years of a contract intended to last five years. The conduct sought

to be prevented was an award of the 2018 Solicitation through a tainted process that excluded Plaintiffs from the competitive range, violating their rights under the RSA. Plaintiffs have continued to service Fort Benning for four of the five years of the potential contract that could have been awarded through the 2018 Solicitation. The Court finds that continuing to enforce a preliminary injunction reaching past the lifetime of the 2018 Solicitation would be inequitable.

### C. Likelihood That the Conduct Will Recur Absent the Injunction

The Court issued the preliminary injunction to maintain the status quo by enjoining the Government from awarding a contract in the 2018 Solicitation until the completion of an arbitration process. Prelim. Injunction Op. & Order. Within that Order, the Court found a likelihood that the Plaintiffs would succeed on the merits of their injunction. *Id.* The Government eliminated Plaintiffs from the competitive range and failed to consult with the Secretary of Education, in violation of the RSA. *Id.* at 12–14. Plaintiffs argue that the Government will violate the RSA again because Congress has found that the Department of Defense has demonstrated its hostility toward the RSA. Pl.s' Resp. Opp., at 15. Further, numerous RSA arbitration panels have found the Government in violation of the RSA by refusing to award cafeteria contracts to state licensing agencies. *Id.* In settlement negotiations, the Government indicated that it would only award Plaintiffs the contract if the proposed price is in the competitive range and the Government believes the price is "reasonable." *Id.* at 17.

Nonetheless, the length of time that has passed since the issuance of the preliminary injunction weighs heavily towards modifying the injunction. Both the preliminary injunction and the six-month bridge contracts are only meant to be temporary solutions, not a permanent fix to violations of the RSA. Moreover, with any new solicitation the Government would be subject to

and expected to act in compliance with the RSA. Any dispute regarding a new solicitation would be resolved on those specific facts.

### D. Change in Circumstances

The Court finds that there have been significant changed circumstances since the 2018 Solicitation. The changed circumstances must alter the balance of the harms that warranted the injunction such that it would be inequitable not to modify it. *See Institute for Justice v. Media Group of America*, LLC, No. 1:15-cv-1410, 2016 WL 8230638, *1, 2 (E.D. Va. Feb. 2. 2016). As stated above, Plaintiffs have continued to provide services to the Government through six-month bridge contracts derived from their 2016 contract. Tr. at 6. The Government argues that the changed circumstances include changed food service needs at Fort Benning, the increased federal contractor minimum wage, and the need for different contract categorization. Def.'s Memo. in Support, at 11-12; Def.'s Supp. Memo., at 6-7. Plaintiffs argue that any changed circumstances can be adequately addressed through bridge contracts. Pl.s' Supp. Memo., at 7. Plaintiffs specifically argue that the current takeout meal needs at Fort Benning are back to the pre-pandemic norm, increased minimum wage requirements do not warrant a new contract, the re-categorization of the contract would not change day-to-day food service operations, and there have been no net increases in the number of dinning facilities at Fort Benning. *Id.* at 8-11.

However, the Court finds that circumstances have changed. These changed circumstances illustrate that future contracts need flexibility not provided in the 2018 Solicitation. While takeout meal pricing has returned to normal and the number of food facilities at Fort Benning has stabilized, the conditions for takeout meal pricing and the number of facilities has not been static over the past few years. Tr. at 24-25. The pandemic revealed the need for not only pricing flexibility when it comes to take out meals but also addressing needs when facilities close and re-

8

open. *Id.* Additionally, a re-categorization of contracts from non-commercial to commercial would benefit the taxpayer. *Id.* 25. The Government wishes to update the federal contractor minimum wage provision in a new solicitation because minimum wage has increased. *Id.* at 25. While plaintiffs argue that all of these changes can be addressed in six-month bridge contracts, those contracts are tied to a contract awarded in 2016 and only provide temporary stop-gap measures to the over-arching problem of needing a new contract. Def.'s Supp. Memo., at 7. Further, by their very nature bridge contracts are meant to align closely with the original contract from which they derive. *Id.* Six-month bridge contracts are not a permanent solution when a new solicitation is needed. The 2018 Solicitation did not contain the flexibility needed in a new solicitation. Due to the changed conditions, the 2018 Solicitation is no longer tailored to present circumstances and future needs.

Additionally, the Plaintiffs argue that the Government's real motivation behind wanting to re-solicit the Fort Benning food services contract is to conduct an "end run" around the RSA. Pl.s' Supp. Memo., at 5. The Court rejects this contention. At most, the arbitration panel could find a violation of the RSA. Tr. at 9. No matter the resolution of the arbitration process, the Government has stated their intention to move forward with a new solicitation. Tr. at 5-6. Whether that new solicitation happens now or at the conclusion of an indefinite arbitration process does not constitute an "end run" around the RSA, as the current preliminary injunction has substantially run the entirety of the contract. The Court finds that there have been significant changed circumstances weighing in favor of a modification of the preliminary injunction.

### E. The Public Interest and Objective of the Preliminary Injunction

It is in the interest of the public to allow the Government to issue a new solicitation now, as the 2018 contract would terminate as early as 2023 if it had been awarded. As stated above, it

has been six years since a contract has been awarded for Fort Benning. The fact that the 2018 Solicitation has not been awarded and instead has been supplemented with bridge contracts derived from a 2016 contract is a disadvantage to the taxpayer. The contract that would have been awarded through the 2018 Solicitation was significantly lower than the contract awarded in 2016. Tr. at 23. Moreover, the changes the Government wishes to make in a new solicitation benefits the taxpayer by enhancing the competitive process. *Id*. at 25.

Further, the purpose of the preliminary injunction has substantially been fulfilled. The purpose of the Preliminary Injunction was to temporarily prevent the Government from awarding a food services contract pursuant to the 2018 Solicitation because the process potentially violated Plaintiffs' RSA rights. Prelim. Injunction Op. & Order. The Preliminary Injunction was intended to last only long enough for the DoE arbitration to decide whether the 2018 Solicitation process was tainted. *Id*. at 1. The injunction has lasted four of the five years of the intended contract. While there is no official administrative finding that the Government violated the RSA, Plaintiffs have continued to serve Fort Benning for four years of the five-year contract they claim rightfully should have been awarded to them. It would be contrary to the objective of the preliminary injunction to allow Plaintiffs to continue to service Fort Benning past the term of the intended 2018 contract. Plaintiffs can continue to service Fort Benning until a new solicitation is awarded and executed. Once the Government produces a new solicitation, the Plaintiffs can bid for the new solicitation. The Court finds that continued enforcement of the preliminary injunction would be detrimental to the public interest and contrary to the objective of the preliminary injunction.

## IV. CONCLUSION

Accordingly, the fact that the Preliminary Injunction has substantially run the length of the possible contact, the demonstrated changed circumstances, and the benefits to the public interest

render the continued enforcement of the original injunction inequitable. For the reasons stated herein, Defendant's Motion to Modify the Preliminary Injunction, ECF No. 85, is **GRANTED**, and the Preliminary Injunction is modified, ECF No. 58.

It is further **ORDERED** the Preliminary Injunction entered on January 22, 2019, is now modified as follows:

1. The Army is authorized, in accordance with Federal Acquisition Regulation 15.206(e), to cancel the existing subject solicitation (W911SF-18-R-0001) for proposals to provide food services at Fort Benning, Georgia, that was the subject of the Preliminary Injunction, ECF No. 58.

2. The Army is authorized to issue a new solicitation for proposals to provide food services at Fort Benning, Georgia, to account for its current needs, provided that any such solicitation and any new award would be subject to the Randolph-Sheppard Act.

3. The Army shall continue to procure food services for Fort Benning from Plaintiff under the same terms provided in the 2016 contract until a new Fort Benning Contract is solicited and awarded.

4. Upon awarding a new contract, the Army promptly shall notify this Court and the Court will issue an Order dismissing this matter.

The Court **DIRECTS** the Clerk to provide a copy of this Memorandum Opinion and Order to counsel and parties of record.

**IT IS SO ORDERED.**

Newport News, Virginia
January 30, 2023

Raymond A. Jackson
United States District Judge

11